Good morning, your honor. May it please the court. I'm Brett Meyerhoff on behalf of petitioners Pedro and Juan Carlos Zita-Martinez. I'd like to reserve two minutes for rebuttal. Thank you, your honor. There are two separate reasons that this court can grant petitioners petition. Asylum and withholding of removal. As to both claims, the record demonstrates that petitioners family group was at least one central reason for their persecution. In fact, although it is unnecessary for purposes of carrying petitioners burden, the record demonstrates that petitioners family group was the primary reason for their persecution after December 5th, 2005, when the gang murdered Juan Batista, petitioner's brother. I'm going to focus on why nexus is demonstrated on the record, then I'll briefly touch on why petitioners were persecuted. So importantly, even if this court assumes MS-13 was motivated in part or even primarily by extortion when it initially targeted petitioners in September of motivation after the gang murdered Batista on December 5th and threatened to murder petitioner Pedro next. And I'd like to cover five points in the record that show why that is the case. And the court can take note of all of these in its de novo review. Now, first, the gang promised to murder each sibling one by one, and that Juan Batista would be the first one killed. And this is on AR 156. And second, and importantly, after the gang in fact murdered Juan Batista, there was zero or no mention of money, finances or extortion whatsoever at any subsequent point. Nonetheless, the gang immediately continued with its plan to kill each sibling one by one and targeted and threatened the lives of petitioners on at least three separate occasions after that point. Specifically, on December 6, the day after the gang killed Juan Batista, they approached petitioner Pedro and callously stated that he was next. And later that day, they again approached Pedro and threatened that he needed to be very careful. This is on AR 157. Again, persecution was wholly divorced from extortion at these points, your honors, on December 6. And there was absolutely no mention of money or finances. This was solely about family relationship. Third, we know that family relationship was at least one central reason for the persecution because petitioner Juan Carlos was never once extorted at any point during this case. Despite this, he still had his life threatened by the gang numerous times, which caused him, for example, to miss his own brother's funeral because he was afraid he's going to be killed. And that's on AR 333. Fourth, petitioners were not and are not afraid about being extorted by the gang. There is zero evidence of that on the record. They are afraid, however, of being terrorized and murdered due to their family relationship to Juan Batista. And this is present in numerous areas on the record, including AR 152 and 331. This credible testimony has itself been found sufficient to show nexus in numerous cases before this court, including Antonin V. Holder and Ikeoko V. Holder. Now, fifth and finally, with regard to nexus, I'd like to direct this court's intention to the unrebutted expert testimony in this case, and specifically to AR 527 through 528. The expert in this case, who's an expert on MS-13, spoke of the gang's ability to harm petitioners due to their family relationship to Juan Batista and stated, quote, Once you can murder somebody in a family, you can murder anybody in that family. This is on 527. He went on to say that anybody in petitioner situation would have to leave because, you know, you would be next. And that is also on 527. Thus, this is a clear family nexus. And family was at least one central reason petitioners had to flee Guatemala and claim asylum and withholding. If we were to agree with you that there is a nexus to the family of social group and that it is one central reason, is there something we would need to remand for further proceedings? Your Honor, if this court finds that nexus is met, then we believe that this court can also decide persecution on behalf of petitioners based on the record. Or if this court chose to remand the persecution aspect of this case back to the BIA, that would be proper because the BIA did not, in fact, hold on persecution. The IJ found that there was no persecution, but the BIA solely focused its opinion on nexus. And so it did not even explicitly incorporate that portion of the IJ's holding. So that suggests we need a Ventura remand on that point. If nexus is found, then we believe it would be proper for this court to remand it to the BIA. However, we also believe that the record is clear that past persecution is met based on this court's precedent, including numerous things such as threats of violence and death being enough just in and of itself to show past persecution. Your Honor, we believe our facts are much more egregious than just threats of violence. There was actual murder that occurred as well as imminent threats of murder. So we believe it would be proper for the court to hold as well on persecution. Does it does it hurt your argument if the threats to kill the remaining three children one by one after the death of Juan Bautista, would it hurt your argument if there's an implicit extortion that goes along with that? Your Honor, we believe that underlying MS-13's actions, often a lot of what they do has some level of implicit financial motive. However, we believe that we would still meet the standard for at least one central reason. Because, Your Honor, even if the gang was motivated in part by money, family group just needs to be at least one central reason, which is clearly met in this mixed motive case. Petitioners do not dispute that money was not even at least one central reason when the persecution began in September of 2005. But we believe that another central reason was family group. Yeah. The reason I ask that, I'm not sure you need to prevail in convincing us that after the death of Juan Bautista, that extortion had entirely disappeared. Correct, Your Honor. And we do not believe that extortion entirely disappeared at any point in the case. But we just believe the primary reason after the death of Juan Bautista became the family group. But we also believe that the family group was at least one central reason throughout the whole persecution beginning in September of 2005. And with regard to persecution, if I may, there is no factual dispute here. There are no factual issues for the IJ or BIA to determine. Based on the evidence in the record and petitioner's credible testimony, past persecution and future persecution are clearly demonstrated here. There's no dispute that petitioner's brother was killed by the gang or that petitioner's lives were threatened numerous times. And there's no dispute as to petitioner's credible testimony that they fear being murdered by the gang if they are returned to Guatemala. And that's in numerous areas of the record, including AR 152. Under this court's case law, including Bolanos Hernandez, threats of violence and death alone are sufficient to constitute persecution. And we believe this record shows much more than just threats. Further, Your Honors, petitioners at the time of persecution were extremely young. They were 13 and 15 years old. And on page 674 of the Ikeoku opinion, this court has held that a petitioner's young age at the time of an incident lowers the threshold to prove persecution. And we believe that that standard should apply as well in this case. Why is Cat off the table? Your Honor, the BIA did not hold for us on Cat, and we chose not to pursue that in the briefs because we believe that the asylum and withholding claims were stronger arguments. We don't believe that Cat is fully off the table, but we believe that asylum and withholding were the more clear cases here. If you didn't brief it to us, it's not on the I have two minutes left. I'd like to reserve the remainder of my time unless there are any further questions. At this time, I gather not. Let's hear. Is it? Do I pronounce Mr. Rabin? Is that how I pronounce it? That's correct, Your Honor. Rabin. Mr. Rabin, your turn. Good morning. May it please the court. Arthur Rabin on behalf of the respondent, the Attorney General. Just to precisely define the issues for the court, here petitioner's asylum claim is based entirely on the sole remaining claim that remains unexhausted and unwaived, and that's whether they were persecuted by gang due to their family particular social group. Although they also raised another particular social group, they said they were Guatemalans who refused to submit the gang extortion. They failed to exhaust that by raising it to the board, and even though the judge, the immigration judge, ruled on that they waived it. They also abandoned, through lack of briefing, their political opinion basis, which the IJ ruled on, but they did not raise it to this court, did not brief it, and as Your Honor noted, the commission against torture claim is also waived. What is on the table is their particular social group of their nuclear family, and so the sole issue here is whether or not they were able to support the immigration judges and the board's decision that they weren't able to show a nexus between their proposed social group, which is their family, nuclear family, and the mistreatment by the gang, the extortion, the threats, and the death of their brother. Now, I do want to take issue with counsel's characterization that the court has de novo review of that issue, and their 28J letter is completely mischaracterized as the case they rely on, which is Garcia. They cite Garcia, and in their 28J letter they specifically say that Garcia held that that is a nexus is reviewed de novo. That is not what Garcia held. In fact, Garcia expressed a reserve that question. In the footnote, it specifically says whether nexus is reviewable for sexual evidence or de novo would need not be decided in that case. In fact, this court has very recently pointed out in cases such as Santos Ponce, which is 987 F3 886, decided in 2021, relying on another case, Parasimova, which was relied on by us in our brief, that nexus is a requirement that is reviewed for substantial evidence. So the issue really here is whether substantial evidence supports the agency's decision. Counselor, let me ask a question about this. As I understand it, you agree that a remand is required on the withholding claim? That's correct, Your Honor, and that's because of intervening change in the law. Okay, so why shouldn't we remand on the asylum claim too? I don't read the order below as necessarily excluding the possibility that the family group could be a central reason, if not the only reason, for denial of the asylum claim, since we have to send it back anyway. Why should we try to parse that issue? Why not just let the agency be clear about it? Well, Your Honor, first of all, the agency was clear that asylum was not a remand, and there are two different forms of relief. One is mandatory. I understand, and I'm not suggesting we grant it. I'm saying that as I read this record, I'm not entirely convinced that the agency found that the family group persecution, alleged family group persecution, was not one of the reasons for the persecution that occurred. It uses rather strange language. It says the central reason was extortion, and we've recognized there can be more than one central reason. So if this were the only issue, I might say, let's spend some time parsing it. But since you agree we have to send it back for a finding about whether it was a reason, why not just send it back for a finding about whether it was also one of the central reasons? Why should, in terms of judicial economy, what are we serving by trying to separate the issues here? Well, how about agency economy, Your Honor? I mean, the board's already spoken on this issue. It is in front of this court for a decision on a reason the board did not correctly deal with their withholding claim and denied it on separate grounds was because Barajas had not yet been decided. So now that you've turned down my invitation to do this the easy way, let's do it the hard way. Defend the board's holding on asylum, recognizing that our case law says there can be more than one central reason for that the family group was not a central reason or there wasn't the central reason because there's a difference between the two. Right. So, Your Honor, here the issue specifically is as to asylum is that they have to show post Real ID Act that the family group served as one central reason. And the board in this decision found that the family central group was not one central reason. Read me what the board found. Tell me the language from the board. Okay. The record supports immigration judges finding that the gang members approached the respondent and his brother, Juan Bautista, primarily, if not exclusively, to extort money from them. Okay. Primarily is not enough, is it? Well, what they're saying is that it's one central reason. So, you know, just focus on my question for a second would primarily exclude the possibility that there was another central reason. But they specifically said, we agree with the immigration judge. They're trying to have not established a nexus from the harm they experienced. And then they go in to describe what that harm was and that they find that it was not one central reason, meaning that the imputed anti-gang political opinion and then their family membership. So they said as found by the immigration judge, there's not a question. Let me ask the question differently. Does the does the board ever say the family group membership was not a central reason? Or is that what you're inferring from their language? No, it's on page 107 of the board's decision, the record, which is the second page of the board's decision. It starts at the top of the page we have recognized. And then it says, however, as found by the immigration judge, the respondents have not established that their family membership was or would be one central reason for the harm they experienced in the past or in the future. So it's right there, Your Honor. So I'm with you on that point. I think the question is squarely presented and in the next paragraph, the board even says there's insufficient reason that the brother was killed because of family membership. But so let's assume the question is squarely presented. Well, there's one argument that would say that Juan Batista was not killed because of family membership. He was killed because he was refusing to pay. The threat to the surviving children, however, that looks like it's family membership because M&M, whatever their names are, Mundo and Marijuana, they say we're going to kill the family members one by one. And here we come. So why is that not a connection to family membership? I don't get it. Well, you're not saying we're going to kill, you know, Jane and Joe. We're going to kill these three children. So those those the one by one started even before any of the death threats. So right. So so if we look at the entirety of what happened here, the brother who's the remaining brother who was threatened said that on page 600 of the record, and that's his declaration, he said that after his brother was killed, Mundo and Marijuana came to him and told him to be careful. Why would they tell him to be careful? They didn't say we're going to kill you. They said to be careful, meaning that he needed to pay. I mean, that's a lot. Are you saying that there is no death threat against the children? That's just not supported by the record. No, there is a death threat, but it's a conditional death threat, Your Honor. And that has always been the conditional death threat. That is, they have to pay or they. But if it's a conditional death threat, and this is partly my question, Mr. Meyerhoff, the fact that the gang is interested in extorting money doesn't mean that there was not another central reason that family social group wasn't the nexus because they're not threatening somebody outside the family. Indeed, the board even suggests that if there were greater danger, then they might find it because they're saying notably the response is a grandmother with whom respondents never threatened or extorted. That's entirely irrelevant. Well, how is that? Let me finish. That's entirely irrelevant. If threats to family members don't don't don't count because they're not family members. OK, you're right, I'm over time, but just to answer your question, we'll take you as far over time as we need to. So don't worry about that. Thank you, Your Honor. I very much appreciate that. So the reason the board said that the grandmother plays into this is because she at all times was part of the nuclear family. So what happened was after the children left, she remained without harm. Well, I'm not sure. Well, she remains without harm, which then suggests that the fact that she had been threatened, maybe there would be a connection. Well, otherwise they wouldn't otherwise they wouldn't write that sentence. Right, so the point of the sentence was to show that, you know, if the family was to send one central reason that once the children departed, the grandmother who was there the whole time as a member of that nuclear family who had gone to the bank, who lived in that home, would have been killed also because she's a member of that family. Do we have evidence that the grandmother went to the bank? Yes, Your Honor. She there's a testimony as well as a declaration that says that the grandmother at one point went to the bank and then she also looked for the brother when she when he disappeared. Well, I know that I know that I know that part. But the original narrative is like it was one Batista and one Pedro are going to the bank, but the grandmother goes to the bank. Yes, Your Honor. I mean, that's my recollection of the record. I can look for it. No, I'm not. I won't contradict you on that point. But somehow, if there's no family connection here, I have trouble imagining any case in which families or social group would ever count. Well, Your Honor, so I guess we have to if family is so central, why wasn't family the reason that the grandmother said that they were persecuted in her own declaration? Why wasn't it that the neighbors pointed out that almost every family goes through that, you know, that anybody who has money there is who's extorted by the gangs? So family, it was a tangential thing. Even if they were not a family relationship here, the gang knew they had money. If there was just a bunch of friends, again, the gang would have gone after them. The gang goes out. The record shows in their expert testified the gang taxes anybody that has money. So the family relationship is completely secondary here. It is minor. It is tangential. The key central reason here was extortion. It escalated because they refused to pay. It ended up in the death of a brother. And then the rest of the record shows that after the brother's death, the gang came to their surviving brother and said, you need to be careful, which means, you know, you need to be careful because you need to start paying. Let me ask you just on that last point you just made, your opponent says that after the death of Juan Batista, the threats were solely just of pure violence. There was no further extortion demands, no attempts to get money from these teenagers. I gather that that's really the point on which you differ with your opponent, that you think that there is evidence that they were that the brothers themselves were extorted for money post the death of Juan Batista? Yes, sir. And I'm extrapolating that from page 600, where in paragraph 25, the surviving brother said, the older brother said later he saw MS-13 gang gangsters that and they came by the house and they told him that I need to be very careful. And it scared me a lot because I did not want to end up like my brother. And so he didn't want to be killed or raped. So he said, OK, let me just be clear that that is the only portion of the record you're relying upon for the notion that they were extorted for money after the death of Juan Batista. Is that it? I don't I mean, there's no other evidence that they were the death threats continued solely because of the family membership. It would continue because of the refusal to pay. I mean, that's that's how it's always been. And that's how it continued. I mean, substantial record evidence supports that. And nothing in the record compels an opposite conclusion. Can I can I know we're focused on this. Can I ask you if there's a difference between Juan Carlos and Pedro Jose? Pedro Jose was targeted from the outset for extortion, as I understand it. Juan Carlos only got threatened after his family refused to pay. He never personally refused to pay. Isn't there a stronger argument in his case that the that the evidence supports the conclusion that that was a central reason for his person? If this is persecution, which we're assuming for present purposes. Well, you're right. So throughout the whole family was threatened throughout by the gang. No, no, I understand that. He didn't go to the bank. Let me just let me finish, because I'm not sure you understand my question. Two, two members of the family were extorted from the outset. Three, Pedro Jose and the murdered member Juan Carlos was only extorted after some refusals to pay from the family. Isn't that a stronger nexus to the family than perhaps those who were extorted from the outset? Well, your honor, first of all, the the sister was also threatened. Initially, they threatened to rape her if they did not pay. And that's how they she's not in front of she's not in front of us, though. I'm asking about Juan Carlos. OK, so and then Juan Carlos, as subsequently they started refusing to pay. He was they threatened the entire family and said, we're going to kill you one by one. And that was the context of how Juan Carlos was threatened. It wasn't that he was individually approached and said, we're going to kill you. It was just your two brothers are refusing to pay and we're going to kill you off one by one until you start paying. That's precisely that's precisely my point. And I think we're missing each other. Maybe it's just an evidentiary point with respect to him. The only reason he was threatened was because his family refused to pay with respect to Pedro Jose. He was threatened because he refused to pay. Correct? Correct. Yes. So isn't isn't that a much stronger case with respect to I'm getting all the names confused, Juan Carlos, than with respect to Pedro Jose? I mean, in that sense, your honor, I hate to disagree with you. I mean, it's just that right now the agency's findings are reviewed for substantial evidence. That's it. So you would have to find as a court that this evidence that you are extrapolating that from the one by one language, never specifically Juan Carlos has never specifically threatened himself individually. From that language, you're going to compel a finding opposite of the agency's. And that's just not there. I will submit that's not there. Let me ask you this, at least in the briefing, we're told that Pedro Jose is detained and Juan Carlos is not. Is that still true? I'm not aware of that, your honor. I would defer to Mr. Beierhoff, because I'm not aware of either of them. OK, well, a point apparently at one point they were. I don't know whether they still are, which is what I'm going to ask. I'll ask me for mayoral help when we get there. Yes, your honor. So this is a court's question. I see him. Are you and I understand the way over. Are you in any way relying on a matter of LEA? Does that make a difference in this case? Yes, your honor. I mean, we're not relying on it because obviously that was decided way after. And so it's not in front of the court. But yeah, LEA specifically held that when these kinds of family issues come up. Well, let me back up a minute. You're saying it's a matter of LEA is not in front of the court. You mean we don't have to pay any attention to it? Well, your honor, it's the board did not rely on the LEA language, which is that if recruitment in that particular case, recruitment was a means to an end, that was not sufficient to show a nexus. So I know I'm on now on a different point. I think I heard you say that you're not relying on a matter of LEA. Is that right? Well, the board did not rely on it. So I cannot I. Your honor, are you saying that later decided case law is irrelevant to our decision? Oh, no, your honor. No, absolutely not. And obviously Chevron deference is due to any of the board's decisions. I'm just saying that in this particular board decision, LEA had not yet been decided. So I understand that. Yeah. And I'm trying to figure out what relevance of any matter of LEA has. Uh. Well, we can't rely on a ground not relied on by the board, can we? That's correct, your honor. That's correct. Well, but but LEA goes directly to the ground. It's just different rationale as to what that what family, some families, a social group means. Right. It's a different analysis, your honor. Meaning that what they said was that if if whatever the alleged prosecution is was only a means to an end, it's not sufficient to show nexus. Well, that's one way of characterizing it. Yes, sure. OK, I can either conclude or yes, if you do, I think we'll finally let you go. OK, thank you, your honor. Subject to the court's questions, I'm done, Mr. Meyerhoff. Your honors, we believe the record supports two avenues of relief, granting petitioners petition in its entirety or finding nexus in favor of petitioners in remanding the issue of persecution to the BIA. The record demonstrates that family group was at least one central reason for petitioners persecution and certainly a reason for persecution. It may demonstrate it, but does it compel that conclusion? That's that's the government's argument. The government's argument is that maybe a finder of fact could have found that it was a central reason. But the finder of fact could have found on this record that the the primary, if not exclusive reason, the way the board put it was was simply extortion, criminal extortion. So why isn't that finding supported by the record? Your honor, a few things in response. We believe the BIA, as your honor was noting, applied the incorrect nexus analysis. We believe they were using the central reason test instead of at least one central reason. On the record, we believe it is compelled that at least one central reason was the family group. And further, I'd like to note that this court can review it on DeNovo. And I know counsel touch on that. So I'd like to just put aside how we can review it for a second. Tell me why counsel was wrong in responding to my questions that he said, well, the board did find that it wasn't a central reason. The language is a little bit mushy, but we can certainly interpret it that way. Can we? Your honor, we can interpret the BIA's language that way as stating that family group was not at least one central reason. But then this court can review it and find that that was an incorrect determination, which we believe it is clearly on the record. Even if the gang was motivated in part by money, family group clearly is at least one central reason. And that we believe is compelled on the facts of the record. And no matter if it's a substantial evidence review or DeNovo review. The factual record is not disputed. What we're really fighting about is what the consequence of the undisputed facts. I mean, substantial evidence is usually goes to is there enough evidence to support a factual conclusion? We're not fighting about facts. Everybody understands what the facts are. They're there. They've been found credible. The question is the legal consequence. That's correct, your honor. That's why we we believe the DeNovo review is proper under Garcia v. Dyer, your honor. I thought you might. I'd also like to touch on something council mentioned with regard to the petitioner's grandmother. So the government argues that petitioner's grandmother residing in Guatemala in 2009 undercuts their showing of nexus. That is plainly false. Your honors, the government is merely assuming that the grandmother was not threatened. There is no evidence one way or the other, which cannot even be upheld under a substantial evidence standard. Further, even if the grandmother was not threatened by the gang, the government has not met its burden under almost Borja v. Holder at page 519 of that opinion to show that these family members were similarly situated, that this grandmother was similarly situated to petitioners. Indeed, the IJ and BIA did not find that they were similarly situated with regard to the family and the grandmother. The cases the government relies on in its briefing, including Santos-Limas, all have clear findings on the record that the petitioner's relative, in this case, the grandmother was deemed similarly situated. That is not the case here. I'd also like to touch on one other point the council made with regard to prevalence of gang violence. The government also argued that the prevalence of gang violence in Guatemala should prevent a finding that petitioner's family was targeted on account of its family group. The government cannot say to any case law to back up this argument because it cuts directly against this court's precedent. And Bolanos-Hernandez at page 1285 of that opinion, as well as Singh v. INS and Ikeoko v. Holder at page 674. Prevalence of harm, as this court has stated, against a group helps petitioner's case. As these cases show, it does not harm it. And can I ask you, is Pedro Jose now detained? So, Your Honor, to my knowledge, Petitioner Pedro is not currently detained. He was at one point. He has since been out on bail and Petitioner Juan Carlos has never been detained, to my knowledge, aside from the initial entry to America. So at the moment, neither is detained. That's correct, Your Honor, to my knowledge, Your Honor. If the court doesn't have any further questions, I'd just like to conclude with, we believe this court should grant petitioner's petition in its entirety and help provide certainty on claims that have been pending for over 15 years. And unless there are any questions, I'd like to thank this court for its time. I think there are no further questions. Thank both sides for their helpful arguments. Zika Martinez v. Garland, now submitting the decision. Thank you, Your Honor.
judges: W. Fletcher, Watford, Hurwitz